**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 20, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

ROBBIN WARD,

    Plaintiff - Appellee,

v.

NATIONAL CREDIT SYSTEMS, INC.,

    Defendant - Appellant.

----------------------------------------------------

ACA INTERNATIONAL, LLC;
NATIONAL CONSUMER LAW
CENTER,

    Amici Curiae.

No. 25-1078

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:21-CV-02597-NYW-JPO)**
_____

John W. Bowdich, Bowdich & Associates, PLLC, Dallas, Texas, for Defendant-Appellant.

Matthew R. Osborne, Ramos Law, Northglenn, Colorado, for Plaintiff-Appellee.

Sarah J. Auchterlonie and Courtney E. Bartkus, Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado, and Leah C. Dempsey, Brownstein Hyatt Farber Schreck, LLP, Washington, D.C., filed an Amicus Curiae Brief on behalf of Defendant-Appellant ACA International, LLC.

Caroline Cohn, National Consumer Law Center, Boston, Massachusetts, filed an Amicus Curiae Brief on behalf of Plaintiff-Appellee Robbin Ward.

_____

Before **TYMKOVICH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Robbin Ward's daughter used his personal information to secure a residential lease for herself in his name. Ward claims she did so without his knowledge or permission. After Ward's daughter failed to timely pay rent, the landlord evicted her and transferred collection of the outstanding debt to National Credit Systems, Inc. (NCS). As part of its collection process, NCS reported the delinquent debt—under Ward's name—to various credit reporting agencies (CRAs) that in turn documented the debt on his credit report.

When he learned of this, Ward disputed the debt and claimed he was a victim of identity fraud by an unknown perpetrator. But after investigating Ward's dispute, NCS determined it could not confirm his protestations, so it concluded the information was accurate and declined to correct its reporting. Ward then sued NCS under the Fair Credit Reporting Act (FCRA) alleging NCS failed to conduct a reasonable investigation of his dispute. The district court permitted Ward's claim to proceed to trial, after which a jury found NCS liable and awarded Ward $500,000 for his emotional distress. NCS appeals from the district court's denial of its post-trial motion challenging the judgment.

This appeal requires us to determine whether a consumer must prove the disputed information was in fact inaccurate to succeed on an unreasonable

investigation claim under the FCRA, and if so, what qualifies as an actionable inaccuracy.

We conclude that inaccuracy is a prima facie element of such a claim. And to establish that element, a consumer must demonstrate the disputed information was objectively and readily verifiable by the furnisher of the information, here NCS, as containing a mistake or error. Ward's claim did not meet that standard because whether the information NCS furnished was in fact inaccurate depended on the veracity of Ward's assertion of identity theft, which was not objectively verifiable, while the objective evidence that was readily available to NCS suggested that he was indeed connected to the debt.

As a result, we **REVERSE** and **VACATE** the district court's judgment against NCS and remand with direction to enter judgment for NCS on Ward's unreasonable-investigation claim.

## I.    Background

### A.    *The Fair Credit Reporting Act*

The FCRA "seeks to promote 'fair and accurate credit reporting' and to protect consumer privacy." *Trans Union LLC v. Ramirez*, 594 U.S. 413, 418 (2021) (quoting 15 U.S.C. § 1681(a)). "To achieve those goals, the Act regulates the [CRAs] that compile and disseminate personal information about consumers." *Id.* The FCRA also regulates the entities that report consumer data to CRAs. The Act terms those entities as furnishers of information. In furtherance of the FCRA's goal of fair and accurate reporting, the Act imposes two primary duties on furnishers.

*First*, furnishers must "accurately report information" to CRAs. *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012) (citing 15 U.S.C. § 1681s-2(a)). If a consumer directly notifies a furnisher "that specific information is inaccurate[,] and the information is, in fact, inaccurate," then the furnisher "shall not furnish [such] information" to a CRA. 15 U.S.C. § 1681s-2(a)(1)(B). And "[i]f a consumer submits an identity theft report to a" furnisher stating the information the furnisher sent to a CRA "resulted from identity theft," the furnisher "may not furnish such information . . . unless [it] subsequently knows . . . that the information is correct." *Id.* § 1681s-2(a)(6)(B). But while the FCRA allows federal agencies and state officials to enforce § 1681s-2(a) against furnishers, the Act does not provide consumers a private right of action to do so. *See* 15 U.S.C. § 1681s-2(c)(1); *Sanders*, 689 F.3d at 1147.

*Second*, if a furnisher receives notice of an indirect dispute, where it "receives notice of a [consumer's] dispute from the [CRA], it must perform the verification and correction duties described in 15 U.S.C. § 1681s–2(b)." *Sanders*, 689 F.3d at 1147. If the furnisher subsequently finds "an item of information disputed by a consumer . . . to be inaccurate or incomplete or cannot be verified after any reinvestigation," then the furnisher must either "modify," "delete," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2(b)(1)(E). But unlike § 1681s-2(a), consumers may bring a civil action against a furnisher for its willful or negligent failure to conduct a reasonable investigation under § 1681s-2(b). *See id.* § 1681n (willful violations); *id* § 1681*o* (negligent violations).

4

### B.    Factual Background

Ward's daughter, LaQuencilla Green, used Ward's social security number and driver's license to apply for a Texas rental property in Ward's name.  Green listed Ward's Colorado address on the rental application but used her own phone number and put herself as Ward's emergency contact.  Green included in the application: color copies of Ward's driver's license and social security card, an altered version of her Texas-based Nieman Marcus pay stubs listing Ward's name, and a fake social security income letter also attributed to Ward.  Green lived on the property for several months but failed to fully pay rent.  The landlord evicted Green and obtained a default judgment for the debt against Ward in a Texas court.[1]  The landlord then assigned collection of the debt to NCS.

NCS reported the delinquent debt to various CRAs that in turn reported the collection account on Ward's credit report.  Ward claims he first learned of the delinquent debt when he tried to refinance the mortgage on his Colorado home.  He

---

[1] The state court default judgment states that Ward was "duly served with process" but "did not answer to deny [the landlord's] claim."  App., Vol. V at 172. Ward, however, argues that because the default judgment is against "Robin" Ward, rather than *Robbin* Ward, the judgment might "relate[] to a different person and case altogether."  Aple. Br. at 36.  But other record documents related to that case list the defendant as "Robbin Ward" and the address on the default judgment is the rental property at issue.  *See* App., Vol. V at 169–71.  In any event, because NCS did not know about the default judgment at the time of the dispute, we do not consider it in our analysis of the inaccuracy issue.  Along with the Texas default judgment, NCS also did not know at the time of its investigation that the IP address used for the online rental application was from Green's Nieman Marcus workplace in Texas and that Green posted videos online showing she was the person living in the rental property.

filed several disputes with the CRAs and NCS claiming he was a victim of identity theft and was thus not responsible for the debt.  With his dispute, Ward included an FTC Identity Theft Report and ID Theft Affidavit, a copy of his driver's license and social security card, and various other documents showing he lived and worked in Colorado.  His ID Theft Affidavit stated that he did not authorize anyone to use his personal information for the rental application and that he did not know who completed it.  He did, however, admit in the affidavit that his daughter worked at Nieman Marcus in Dallas and that the associated pay stubs were hers, though with his name on them.  *See* App., Vol. III at 215–16.  Ward also stated that although his driver's license had not been stolen, he had given it to his daughter in the past for other purposes.  But despite the above evidence that suggested Green submitted the rental application, Ward maintained that an unknown thief must have stolen his and his daughter's information to incur the rental debt.  Ward now contends he was unaware of Green's fraud until he saw videos showing her living on the property.

NCS investigated Ward's claim over several months.  It discovered that Ward's driver's license matched the one on the rental application and that Ward's daughter worked at Nieman Marcus in Texas.  After verifying that the debt "balance" and "identifying documents" were "correct," NCS concluded the information it furnished was accurate, so it continued to report the debt to the CRAs.  App., Vol. III at 208.

6

### C.    Procedural Background

Ward sued NCS and the CRAs alleging they violated the FCRA.  Among other claims, Ward alleged NCS negligently failed to conduct a reasonable investigation of his dispute under § 1681s-2(b)(1).  The CRAs settled with Ward before trial.

NCS moved for summary judgment.  It argued Ward's negligence claim failed because he could not show NCS reported an inaccurate debt or that it conducted an unreasonable investigation.  On the inaccuracy issue, NCS argued Ward's claim of identity theft raised a legal dispute that was not cognizable under the FCRA.

The district court denied NCS's motion on those issues, allowing Ward's negligence claim to advance.[2]  It concluded that whether Ward established the disputed information was inaccurate was a question of fact for the jury.  The district court also found there was sufficient evidence for a jury to conclude NCS's investigation was not reasonable.  Throughout pretrial proceedings, NCS continued to ask the district court to reconsider its ruling on the inaccuracy issue, arguing Ward failed to make a prima facie showing that NCS furnished inaccurate information.  But the district court stood by its decision, and the case proceeded to a jury trial.

The jury returned a verdict for Ward, finding NCS negligently failed to conduct a reasonable investigation of the disputed debt.  It awarded Ward $500,000 for his claimed emotional distress.

---

[2] Ward also alleged NCS willfully violated the FCRA, but the district court granted summary judgment to NCS on those counts.  The district court also granted summary judgment to NCS against Ward's claim for economic damages, leaving only Ward's negligence claim for emotional distress.

NCS subsequently moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), again arguing Ward's dispute was not cognizable under the FCRA because it raised a legal dispute. NCS also argued Ward's claim was not actionable because the information in dispute was not objectively and readily verifiable as inaccurate—a standard other circuits have adopted under the FCRA. The district court denied the motion and NCS appealed.

## II.    Discussion

NCS raises one central issue: whether the district court applied the correct legal standard for Ward's unreasonable-investigation claim. NCS argues the district court erred in denying its Rule 50(b) motion because Ward failed to establish that the information NCS furnished to the CRAs was inaccurate.[3]

We review a district court's denial of a Rule 50(b) motion de novo. *See Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1243–44 (10th Cir. 2009). And because this issue presents a question of statutory interpretation, we review the

---

[3] Ward contends NCS did not preserve this argument for appeal because it raised the issue for the first time "in a post-trial motion" without "mov[ing] for [a] directed verdict on the same grounds." Aple. Br. at 6. But NCS did move for a "directed verdict" under Rule 50(a) (*i.e.*, a judgment as a matter of law) at the close of evidence arguing Ward's claim was "not actionable under the FCRA." App., Vol. X at 256–58. NCS also preserved this issue because it moved for summary judgment arguing Ward "cannot demonstrate any actual inaccuracies in NCS's reporting . . . ." App., Vol. I at 107. *See Wolfgang v. Mid-Am. Motorsports, Inc.*, 111 F.3d 1515, 1521 (10th Cir. 1997) ("[W]hen the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment.").

district court's application of the FCRA de novo.  *See Sinclair Wyo. Ref. Co. v. EPA*, 887 F.3d 986, 990 (10th Cir. 2017).

### A.    *Legal Framework*

Ward's claim arises under § 1681*o* of the FCRA, which entitles consumers to "actual damages sustained by the consumer as a result of" a furnisher's negligent failure to comply with § 1681s-2(b) of the FCRA.  15 U.S.C. § 1681*o*(a)(1). Section 1681s-2(b) requires "a furnisher of information who has received notice of a dispute from a CRA" to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013) (internal quotation marks omitted).

We have yet to authoritatively state whether an unreasonable-investigation claim under § 1681s-2(b) requires a consumer to prove the disputed information was in fact inaccurate.

To determine the statutory requirements of a § 1681s-2(b) claim, we start with the text.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  And the provision's text makes clear that the entire focus of the FCRA's obligations on furnishers is to prevent *inaccurate* reporting.  For instance, although a furnisher's

9

duty to investigate is triggered upon notice from a CRA that the consumer disputes the "completeness or accuracy" of the furnished information, the furnisher only incurs an obligation to fix the information if it finds "the information *is* incomplete or inaccurate . . . ." 15 U.S.C. § 1681s-2(b)(1)(D) (emphasis added). And if a furnisher is directly "notified by [a] consumer . . . that specific information is inaccurate," it must only stop furnishing the information if it "*is, in fact, inaccurate.*" *Id.* § 1681s-2(a)(1)(B) (emphasis added). The text thus shows that a furnisher's obligation at the start is to correct its reporting only when the information is inaccurate or incomplete.[4]

And because a furnisher only incurs such an obligation when the disputed information is in fact inaccurate or incomplete, the consumer must prove inaccuracy (or incompleteness) as a necessary predicate to establishing actual but-for causation, which is another statutory requirement of a negligence claim under the FCRA.[5] For

---

[4] "[T]he FCRA's requirement that furnishers of information correct 'incomplete or inaccurate' information, 15 U.S.C. § 1681s-2(b)(1)(D), extends not only to false information, which is clearly inaccurate, but to information provided in such a manner as to create a materially misleading impression as well." *Llewellyn*, 711 F.3d at 1186 (internal citations and quotation marks omitted). Therefore, as an alternative to proving inaccuracy, a consumer can also sustain a § 1681s-2(b) unreasonable-investigation claim by making a prima facie showing that the furnisher's report was so incomplete as to render the disputed information materially misleading. But because Ward did not allege NCS's report was incomplete, we do not address such a claim.

[5] Section 1681*o* states, "Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—(1) any actual damages sustained by the consumer *as a result of that failure . . . .*" 15 U.S.C. § 1681*o*(a)(1) (emphasis added). This provision's statement that a plaintiff can only recover damages that are

example, if the information the furnisher reported was in fact *accurate*, then whether the furnisher conducted a reasonable investigation would be irrelevant: no matter how unreasonable it was, the allegedly deficient investigation could not have caused the consumer's claimed injury because the FCRA does not require a furnisher to alter accurate information. Thus, as a prerequisite to proving actual causation, a consumer must establish that the disputed information was in fact inaccurate or incomplete.

Our case law also supports this conclusion. We have said in unpublished opinions that to maintain a § 1681s-2(b) claim, a consumer "bears the burden of showing that the information [the furnisher] furnished was inaccurate or incomplete," *Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir. 2014), and that the consumer's "dispute must be bona fide, i.e., one that could materially alter how the reported debt is understood," *Sartori v. Susan C. Little & Assocs., P.A.*, 571 F. App'x 677, 682 (10th Cir. 2014) (internal quotation marks omitted).

And we have held that a furnisher's investigation under § 1681s–2(b) need only be "one that a reasonably prudent person would undertake under the circumstances." *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir.

---

a "result" of a furnisher's negligence "imposes a requirement of but-for causation." *Burrage v. United States*, 571 U.S. 204, 214 (2014); *see also id.* at 212 ("Where there is no textual or contextual indication to the contrary, courts regularly read phrases like 'results from' to require but-for causality."). The requirement for actual cause "requires proof 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *Id.* at 211 (citation modified) (quoting Restatement (First) of Torts § 431 cmt. a (Am. L. Inst. 1934)). "This but-for requirement is part of the common understanding of cause." *Id.* "This is so because it is natural to say that one event is the outcome or consequence of another when the former would not have occurred but for the latter." *Id.* at 212.

11

2016) (quotation marks omitted). "In this respect, a furnisher's duties resemble those of a [CRA], which can also be liable for failing to 'follow reasonable procedures to assure maximum possible accuracy' of information on a credit report." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (quoting 15 U.S.C. § 1681e(b)). And for a consumer to prevail on an unreasonable-procedures (§ 1681e(b)) or unreasonable-investigation (§ 1681i(a)) claim against a CRA, he "must establish that: (1) the CRA failed to follow reasonable procedures to assure the accuracy of its reports; (2) *the report in question was, in fact, inaccurate*; (3) [he] suffered injury; and (4) the CRA's failure caused his injury." *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015) (emphasis added) (citation modified); *see also* 15 U.S.C. § 1681i(a)(1)(A) (A CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" upon notification of a consumer dispute.). "This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play." *Gross*, 33 F.4th at 1251.

We join the circuits that have extended this logic to FCRA claims against furnishers and conclude that a consumer must make a prima facie showing that the disputed information was in fact inaccurate or incomplete to prevail on a § 1681s-2(b) unreasonable-investigation claim. *See, e.g., id.* ("[T]o prevail on a FCRA claim against a furnisher, a consumer must make a prima facie showing that the furnisher's report was inaccurate."); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025) (A consumer must allege "inaccuracy (or incompleteness) . . . to satisfy the

12

first element of a failure to investigate claim" under § 1681s-2(b).); *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010) ("Section 1681s-2(b) . . . requir[es] a showing of *actual inaccuracy* in suits against furnishers." (emphasis added)); *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) (A consumer must "demonstrat[e] that *had* the furnisher conducted a reasonable investigation, . . . [it] would have discovered that the information it reported was inaccurate or incomplete . . . ."). And as an element of a § 1681s-2(b) claim, when there are no underlying material factual disputes and a furnisher challenges the consumer's showing of inaccuracy or incompleteness, the court must resolve the issue and cannot leave it as a fact question for the jury. *See Gross*, 33 F.4th at 1251 ("[B]efore a court considers the reasonableness of [a furnisher's] procedures, the consumer must make a prima facie showing of inaccuracy in the [furnisher's] reporting." (internal quotation marks omitted)); *Chiang*, 595 F.3d at 37 ("[A]bsent a showing of actual inaccuracy on a reinvestigation, a plaintiff's claim against [a furnisher] fails *as a matter of law*." (emphasis added)). The judge "is better positioned" than the jury to make this determination because "the relevant legal principle can be given meaning only through its application to the particular circumstances of a case" and "assessments of credibility and demeanor are not crucial to the proper resolution of the ultimate issue . . . ." *See Miller v. Fenton*, 474 U.S. 104, 114, 116–17 (1985).

Ward, however, argues the FCRA does not require "proof of actual inaccuracy as a threshold matter." Aple. Br. at 7 (internal citation omitted). Rather, he contends

a furnisher's duty to investigate is triggered upon mere notice of a dispute and the furnisher must also, for example, correct its report if the accuracy of the information "cannot be verified . . . ." *Id.* at 8 (quoting 15 U.S.C. § 1681s-2(b)(1)(E)).  But Ward is mistaken.  Even though a furnisher must investigate upon notice of an indirect dispute, the reasonableness of that investigation only comes into play when the information is in fact inaccurate or incomplete, as we explained above.  And the provision's requirement that a furnisher either modify, delete, or block reporting information it finds "cannot be verified after any reinvestigation" does not alter that conclusion.  *See* 15 U.S.C. § 1681s-2(b)(1)(E).  Subsection 1681s-2(b)(1)(E) merely lists various actions a furnisher must take when triggered by the results of its investigation; it does not bear on whether a consumer has an actionable claim against the reasonableness of that investigation.  The "cannot be verified after any reinvestigation" language deals with the scenario where a furnisher determines from its investigation that *further* investigation into the accuracy of the disputed information would be futile.  *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303–04 (11th Cir. 2016) ("When a furnisher reports that disputed information 'cannot be verified,' the question of whether the furnisher complied with § 1681s-2(b) will likely turn on whether the furnisher reasonably determined that further investigation would be fruitless or unduly burdensome.").  But that was not the situation here where NCS determined the disputed information was accurate; the "cannot be verified" provision is thus not at issue.  *See Reyes v. Equifax Info. Servs., LLC*, 140 F.4th 279, 287–89 (5th Cir. 2025) ("[R]eading § 1681i(a)(5)(A) to require

14

the deletion of debt information because of inaccuracies which 'cannot be verified' until all legal disputes are fully adjudicated would frustrate the FCRA's goal of ensuring fair and accurate credit reporting." (internal quotation marks omitted)).

We recognize that § 1681s-2(a)(6) imposes certain duties on a furnisher "upon notice of identity theft-related information." *See* 15 U.S.C. § 1681s-2(a)(6). For instance, when "a consumer submits an identity theft report to" a furnisher alleging information that the furnisher maintains "resulted from identity theft," the furnisher "may not furnish such information . . . to any [CRA], *unless the* [*furnisher*] *subsequently knows . . . that the information is correct*." *Id.* § 1681s-2(a)(6)(B) (emphasis added).

Section 1681s-2(a)(6), however, does not extinguish the requirement for a consumer to establish inaccuracy just because he submits an identity theft report. Initially, as we explained, consumers cannot bring private actions under any provision of § 1681s-2(a), including this one. The provision thus does not control a consumer's claim under § 1681s-2(b). Second, this identity-theft provision does not bar a furnisher from reporting the disputed information when the furnisher knows the information is correct. Therefore, when a furnisher concludes the information is correct (as NCS did here), the provision's potential application turns on whether the furnisher was wrong to make that conclusion because the information was in fact *in*correct (*i.e.*, inaccurate). And a consumer's submission of an identity theft report supported solely by his own allegations cannot establish the disputed information was inaccurate. *See id.* § 1681s-2(a)(1)(D) (A furnisher will have "reasonable cause to

15

believe that the information is inaccurate" when it has "specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information." (emphasis added)). As a result, § 1681s-2(a)(6) does not change our conclusion.

In sum, we conclude that for a consumer to establish a prima facie case under § 1681s-2(b) of the FCRA, the consumer must at least establish that: (1) he disputed the information through a CRA, *see Sanders*, 689 F.3d at 1147; (2) the information was in fact inaccurate or incomplete; (3) the furnisher's investigation of his dispute was unreasonable, *see Maiteki*, 828 F.3d at 1275; (4) he suffered an injury; and (5) the furnisher's unreasonable investigation was the actual cause of his injury.

### B.    *Inaccuracy Under the FCRA*

The district court correctly identified inaccuracy as one of the elements Ward had to prove for his negligent investigation claim. *See, e.g.*, App., Vol. II at 85 (instructing the jury that Ward "must show that the information furnished by NCS was inaccurate, incomplete, or misleading"). It then relied on our decision in *Wright* to conclude the standard for inaccuracy depended on whether Ward's dispute was a legal or factual one. *See Wright*, 805 F.3d at 1242. Applying this legal-factual distinction, the district court denied NCS's motion for summary judgment on the inaccuracy element because it found Ward raised a factual dispute, the accuracy of which NCS could have uncovered through a reasonable investigation.

NCS requests that we reject the legal-factual distinction to assess inaccuracy and instead adopt the standard that other circuits have recently used. Under that

standard, to determine "whether a claimed inaccuracy is potentially actionable under § 1681s-2, a court must determine, among other things, whether the information in dispute is 'objectively and readily verifiable.'" *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024) (citation modified).

We have not yet articulated the standard for inaccuracy under the FCRA. We acknowledge that some district courts in our circuit, like the district court here, have read *Wright* to "indicate[] that the FCRA does not require resolution of 'legal disputes about the validity of the underlying debt[]'" and subsequently relied on a purported legal-factual distinction. *See, e.g.*, *Plater v. Phoenix Fin. Servs.*, 762 F. Supp. 3d 1098, 1108 (W.D. Okla. 2024) (second alteration in original) (quoting *Wright*, 805 F.3d at 1242). But in *Wright* we were not addressing what was an actionable inaccuracy under the FCRA. Rather, we were analyzing what the term "reasonable reinvestigation" required within the context of an unreasonable investigation claim against a CRA. *See* 15 U.S.C. § 1681i(a). Under § 1681i(a), "[a] reasonable reinvestigation . . . does not require CRAs to resolve legal disputes about the validity of the underlying debts they report." *Wright*, 805 F.3d at 1242. And while *Wright*'s legal-factual distinction might be relevant to the *reasonableness* of a furnisher's investigation, it does not control our interpretation of the inaccuracy element of a § 1681s-2(b) claim.

To determine what constitutes an actionable inaccuracy, we again look at the text of the statute. Section 1681s-2(b)(1) states that after receiving notice of an indirect dispute about the "accuracy of any information" it furnished to a CRA, the

17

furnisher must investigate to determine whether the information is "inaccurate," and if so, take appropriate action. 15 U.S.C. § 1681s-2(b)(1)(A), (D), (E). The FCRA defines neither accuracy or inaccurate, but a dictionary from around the time the Act became law defines "accuracy" "as 'freedom from mistake or error' or 'conformity to truth or to some standard or model.'" *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) (quoting Webster's Third New International Dictionary 13–14 (1971)). The definition's reference to "truth" or "some standard or model" makes clear that determining accuracy is an *objective* inquiry. We accordingly agree with the other circuits that to determine whether something is accurate "requires a focus on objectively and readily verifiable information."[6] *Id.*

The text of other subsections of § 1681s-2 support our conclusion that a consumer must demonstrate the disputed information is *objectively* inaccurate to prevail on a § 1681s-2(b) unreasonable-investigation claim. For example, the FCRA bars a furnisher from reporting information to a CRA that a consumer disputes as inaccurate only if "the information is, *in fact*, inaccurate." 15 U.S.C. § 1681s-2(a)(1)(B) (emphasis added). Similarly, the FCRA bars furnishers from reporting information to a CRA when it "knows or has reasonable cause to believe that the information is inaccurate." *Id.* § 1681s-2(a)(1)(A). Section 1681s-2 defines "the term 'reasonable cause to believe that the information is inaccurate'" to mean

---

[6] Ward's trial counsel even agreed during the discussion of NCS's Rule 50(a) motion that the relevant legal determination "hinge[d] on a matter of objectively verifiable facts." App., Vol. X at 261.

18

"having specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information." *Id.* § 1681s-2(a)(1)(D) (emphasis added). And although subsection (a) is not enforceable by a consumer against a furnisher, it nonetheless reveals that the FCRA is concerned with *objectively* inaccurate information—not inaccuracies based only on subjective allegations from a consumer.

We thus follow the Fourth, Second, Fifth, and Eleventh Circuits and conclude that under the FCRA "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable" by the furnisher as containing a mistake or error. *Roberts*, 131 F.4th at 251 (quotation marks omitted); *see also Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023); *Reyes*, 140 F.4th at 288; *Holden*, 98 F.4th at 1369. *Cf. Gross*, 33 F.4th at 1252 (the Ninth Circuit "defining inaccuracy under FCRA as information that is 'patently incorrect' or materially misleading"). And as explained, courts must make a threshold legal determination under this standard if the furnisher challenges the sufficiency of the consumer's claim because inaccuracy is a prima facie element of a § 1681s-2(b) claim. *See Holden*, 98 F.4th at 1369 ("[I]n determining whether a claimed inaccuracy is potentially actionable under § 1681s-2, *a court must determine* . . . whether the information in dispute is 'objectively and readily verifiable.'" (emphasis added) (quotation marks omitted)).

That brings us to the final, important point: What does it mean for information to be objectively and readily verifiable as inaccurate? "[A] dispute that involves

19

complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't either." *Roberts*, 131 F.4th at 251. Put another way, "purely factual or transcription errors or a straightforward application of law to facts constitute 'objectively and readily verifiable' information." *Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 WL 1620921, at *2 (11th Cir. June 9, 2025) (per curiam) (internal quotation marks omitted). "Conversely, allegedly inaccurate information that stems from a dispute without a straightforward answer does not." *Id.* (citation modified). And because *Wright*'s purported legal-factual distinction does not control our interpretation of the inaccuracy element, we "decline to impose a bright-line rule that only purely factual or transcription errors are actionable under the FCRA." *Holden*, 98 F.4th at 1369 (internal quotation marks omitted). *See also Roberts*, 131 F.4th at 252 ("[B]oth legal and factual disputes can form the basis of a § 1681s-2(b) claim, so long as they are objectively and readily verifiable."); *Sessa*, 74 F.4th at 43 ("[T]here is no bright-line rule providing . . . that only purely factual or transcription errors are actionable under the FCRA.").

## C.    *Ward's Identity Theft Dispute*

Ward asks that if we adopt the objectively-and-readily-verifiable standard, we remand to the district court for it to determine whether he demonstrated the disputed information was inaccurate. While our standard "practice on issues raised below but not ruled on by the district court is to leave the matter to the district court in the first

instance," *Greystone Const., Inc. v. Nat'l Fire & Marine Ins.*, 661 F.3d 1272, 1290 (10th Cir. 2011) (citation modified), the district court *did* address the objectively-and-readily-verifiable standard in its post-trial order. NCS argued in its Rule 50(a) and 50(b) motions that the district court should apply that test for inaccuracy. *See* App., Vol. X at 256–58. The district court concluded that even if it were to apply the objectively-and-readily-verifiable standard, Ward had met it. *See* App., Vol. III at 163 ("Whether Mr. Ward filled out the lease application or not—or whether his daughter filled out the lease application with his permission—are objectively verifiable facts. Indeed, these facts were implicitly decided by the jury when it returned a verdict in Mr. Ward's favor."). Remanding to the district court for it to make that same finding would be a "needless waste of party and judicial resources," *Kan. Nat. Res. Coal. v. U.S. Dept. of the Interior*, 971 F.3d 1222, 1234 (10th Cir. 2020) (quotation marks omitted), so we review its denial of NCS's Rule 50(b) motion on this issue de novo. *See Wagner*, 586 F.3d at 1244.

NCS argues the district court "erred when it refused to grant NCS judgment as a matter of law [because] Ward's dispute necessarily required NCS to make a subjective determination [of] Ward's veracity in the absence of objectively and readily verifiable information."[7] Aplt. Br. at 12. It contends Ward's claim that he

---

[7] NCS also argues that the district court "erred when it refused to grant NCS judgment as a matter of law [because] the Texas state court judgment against Ward for the debt conclusively establishes that the information NCS reported to the [CRAs] was accurate." Aplt. Br. at 11. But we need not address this argument because we conclude Ward failed to prove inaccuracy even without considering the effect of the state court judgment.

was the victim of identity theft was not objectively and readily verifiable because it required a credibility determination and resolution of an unsettled legal question: Was Ward an unknowing *victim* of his daughter's fraud?  Or was he *complicit* in her scheme because he either knew about it from the beginning or he later found out about it but protected her after the fact?

The Eleventh Circuit confronted a similar situation in *Rozov v. Bank of America*, No. 24-13034, 2025 WL 1620921 (11th Cir. June 9, 2025).  In that case, a consumer deposited a fraudulent check into his bank account.  When the bank noticed the fraud, it closed the account and reported it to a CRA.  The consumer disputed the account with the CRA and the bank, but after conducting their investigations, the bank and the CRA confirmed the accuracy of their reporting.  The consumer sued the CRA under the FCRA, alleging that he was the *victim* of fraud, not the perpetrator.  Because he submitted an FBI victim report with his dispute, the consumer argued the information was "objectively and readily verifiable because there is a clear delineation between a perpetrator of a fraud and a victim of that same fraud."  *Rozov*, 2025 WL 1620921, at *3 (internal quotation marks omitted).  The Eleventh Circuit, however, held the dispute was not objectively and readily verifiable.

> [The CRA] would still need to confirm the veracity of the allegations Plaintiffs provided to the FBI. . . .  [W]ithout simply taking Martino at his word, his protestations of innocence do not demonstrate that his innocence is objectively and readily verifiable. . . .  [F]raud schemes are often complex and sifting perpetrator from victim is no easy process.  While we must take Plaintiffs' version of events as true at the pleadings stage, [the CRA] had no such obligation.  And confirming Martino's purported innocence

22

was not the type of straightforward application of law to facts that [the CRA] could objectively and readily verify.

*Id.* (internal quotation marks omitted).

Likewise, Ward's claim of identity theft is not the type of straightforward application of law to facts that NCS could objectively and readily verify. Like the CRA in *Rozov*, NCS would have had to take Ward at his word that he was not involved in his daughter's fraud because her scheme was clever—so much so that Ward claims *he* did not even discover his daughter was the perpetrator until after he filed this lawsuit. *See* 15 U.S.C. § 1681s-2(a)(1)(D) (A furnisher has "reasonable cause to believe that [disputed] information is inaccurate" when it has "specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information." (emphasis added)). Accordingly, Ward cannot satisfy his prima facie requirement to show that the information was in fact inaccurate.

Decisions from other circuits applying the objectively-and-readily-verifiable standard also support our conclusion that Ward's claim of identity theft was insufficient to prove inaccuracy. *See, e.g.*, *Reyes*, 140 F.4th at 287 (rejecting a consumer's argument that "the reported Citibank account information was inaccurate [since] whether she 'owed the debt' (i.e., the outstanding balance) was contested and unresolved" because "her alleged inaccuracy was based on a not-yet-adjudicated position that the debt is not legally valid" (citation modified)); *Mader*, 56 F.4th at 269–70 (finding an "unresolved legal question" about the "validity of [the

23

consumer's] debt means that its status is not sufficiently objectively verifiable to render [his] credit report 'inaccurate' under the FCRA"); *Holden*, 98 F.4th at 1368 ("[T]he alleged inaccurate information is not objectively and readily verifiable because it stems from a contractual dispute without a straightforward answer. . . . And [while] we agree that furnishers *are* qualified and obligated to assess issues such as whether debts are actually due and/or are collectible, . . . that *is* what [the furnisher here] did." (internal citations and quotation marks omitted)).

The district court, however, relied on a case from the Southern District of Florida to conclude Ward's claimed inaccuracy *was* objectively verifiable. *See* App., Vol. III at 162 (citing *Paulino v. W. Funding II Inc.*, 737 F. Supp. 3d 1338 (S.D. Fla. 2024)). In *Paulino*, a consumer discovered that someone had taken out an auto loan in his name. Although the disputed loan was in the consumer's name, it contained an *incorrect address* and an *incorrect social security number*. The consumer filed a dispute with the CRA reporting the debt. But "despite its knowledge that the SSN used on the Disputed Loan did not match [the consumer's] actual SSN," the CRA "determined the Disputed Loan belonged to [the consumer] and declined to change its reporting or block the Disputed Account." *Paulino*, 737 F. Supp. 3d at 1343. The consumer sued the CRA for an unreasonable investigation under the FCRA. The CRA moved to dismiss the suit, arguing the consumer did not adequately plead the information was inaccurate because it was not objectively and readily verifiable. The district court denied the motion because it found "the question of whether Plaintiff executed the Disputed Loan is objectively and readily verifiable . . . . [W]hether

24

Plaintiff executed the Disputed Loan, is a factual question that will be answered in the affirmative or negative. Put differently, Plaintiff's dispute with the CRA's boils down to whether he executed the Disputed Loan on November 8, 2022, or whether someone else did so without his authorization." *Id.* at 1346.

The district court here found Ward's situation similar to the one in *Paulino*, concluding, "[w]hether Mr. Ward filled out the lease application or not—or whether his daughter filled out the lease application with his permission—are objectively verifiable facts." App., Vol. III at 163. But the disputed information in *Paulino* was materially different than Ward's dispute. The court in *Paulino* found it plausible that the disputed information was objectively inaccurate because the disputed "account was associated with a SSN and personal identifying information that differed from" the consumer's. 737 F. Supp. 3d at 1347. Because the inaccuracy of that "factual information [was] easily verifiable via consultation of available records," *Rozov*, 2025 WL 1620921, at *3 n.4, the *Paulino* court found the CRA could have easily and objectively verified the disputed loan was not made by the consumer. But here, all *objective* information about the rental debt pointed towards Ward's involvement through his daughter: the rental application contained true copies of his driver's license and social security card (neither of which Ward reported as stolen), Ward's correct address, and Ward's daughter's phone number and job information.

Ward, however, argues the objective evidence available to NCS confirmed that the rental application was fraudulent. He claims the pay stubs and social security letter "were obviously fake," the phone number used to rent the apartment was not

25

Ward's, and Ward's actual paystubs and mortgage statement he provided with his dispute showed that he lived in Colorado and not Texas. Aple. Br. at 17–21. But none of that evidence forecloses the possibility that Ward either allowed his daughter to use his information to obtain the lease or that she did so without his permission initially but that he subsequently chose to protect her and helped conceal her deception. In either scenario, it is unclear whether Ward would bear responsibility for the rental debt, presenting an unsettled legal question that made the disputed information *not* objectively inaccurate. *See Roberts*, 131 F.4th at 251 ("Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation.").[8]

Ward also contends that NCS could have discovered other evidence that demonstrates he was not responsible for the debt. He points out that "the IP address used to rent the apartment did not match" Ward's location in Colorado and the landlord was aware the tenant was female. Aple. Br. at 19–20. But whether NCS

---

[8] Our decision does not mean that *all* consumer claims of fraud or identity theft are categorically not objectively and readily verifiable. If a consumer's dispute of identity theft contains objective evidence showing the consumer was not tied to the debt it might meet the inaccuracy standard. And even consumers in Ward's position, with only subjective evidence of fraud, are not without recourse. For example, Ward could have pursued his allegation of identity theft with law enforcement or a regulatory agency to gather more information that objectively proved he was the victim of fraud. Or Ward "could sue [NCS] for a declaration that [he] no longer owed a debt," and "[w]ith that declaration in hand, [he] would have a much stronger cudgel with which to force [NCS] to stop reporting [the] debt to a reporting agency." *Holden*, 98 F.4th at 1368–69 (citation modified).

*should* have discovered such evidence goes towards the reasonableness of its investigation because Ward did not include it in his dispute. For instance, NCS could have also attempted to contact Green to inquire whether she used Ward's personal information without his knowledge or approval. In any event, none of that evidence would have allowed NCS to objectively verify that Ward was not connected to the rental application through his daughter. Even if NCS contacted Green and she subsequently admitted to committing identity fraud and disavowed Ward's involvement, the inaccuracy of the disputed information would still depend on the truth of her assertions. This would require NCS to subjectively assess her credibility, which as we explained is something a furnisher is not qualified nor obligated to do. Thus, Ward cannot show the information was inaccurate under the objectively-and-readily-verifiable standard.

## III.    Conclusion

For these reasons, we reverse the district court's denial of NCS's Rule 50(b) motion, vacate the district court's judgment for Ward, and remand with direction to enter judgment for NCS on Ward's negligence claim.